SO ORDERED.

Dated: September 20, 2013

Eddward P. Ballinger Jr., Bankruptcy Judge
_____

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

MINUTE ENTRY/ORDER

FOR MATTER TAKEN UNDER ADVISEMENT

| | |
|---|---|
| Bankruptcy Judge: | Eddward P. Ballinger, Jr. |
| Case Name: | Kelland Investments, LLC  -  Chapter 11 |
| Case No.: | 0:10-bk-10541-EPB |
| Adversary Name: | Desert Road Builders and Mark Kelland v. Kelland Investments, LLC |
| Case No.: | 0:10-ap-01392-EPB |
| Subject of Matter: | Trial |
| Date Matter Taken Under Advisement: | September 11, 2013 |
| Date Matter Ruled Upon: | September 20, 2013 |

### A Sale is a Sale…or is it?

In January, 2005, Kelland Investments, LLC ("KI") sold four parcels of real property to Desert Road Builders, Inc. ("DRB"). Commercial gravel pit operations were situated on three of

1

these parcels (the "Gravel Pits"); the fourth parcel was undeveloped (the "Industrial Property"). The agreements memorializing these transactions are similar, but not identical. In this proceeding, KI acknowledges that it sold the Gravel Pits to DRB, but claims that the transaction involving the Industrial Property was not a sale, but rather an equitable mortgage. DRB disagrees and asserts clear title to all four parcels. This ruling resolves this dispute, at least at the trial level…for now.

In Arizona, the test for determining if a sale of realty should legally be deemed a secured loan was first announced in *Merryweather v. Pendleton*, 91 Ariz. 334, 372 P.2d 335 (Ariz. 1962) and subsequently modified by the Arizona Supreme Court in *Shelton v. Cunningham*, 109 Ariz. 225, 228, 508 P.2d 55, 58 (Ariz. 1973). In the latter case, the court recognized that "[t]he equitable mortgage doctrine is a device used to prevent an avaricious lender from taking advantage of a distressed borrower," but made clear that the burden is on the alleged borrower to show, by clear and convincing evidence, that a challenged transaction constituted a mortgage rather than a sale. [1]

Before addressing the extent to which each of the factors outlined in *Merryweather* applies in this case, a threshold issue is presented: Is the trial court required to apply the *Merryweather* test every time there is an assertion that a sale is a disguised loan? In answering this question, the Court is mindful that *Merryweather* (and every subsequent relevant decision) focused on one issue: What did the parties intend? Did they aim to create a security

_____

[1] 109 Ariz. 228, 508 P.2d 58 ("In cases where the central issue is whether an outright sale or a mortgage was intended, the burden is upon the borrower to establish…by [c]lear and convincing evidence, that a loan was intended.")

2

transaction or did they intend a bona fide, bargained-for sale of the property in question?  Was the property transferred for the purpose of assuring payment, or was the property itself the consideration for which funds were paid?  *Id*. at 339.  Initial intent has always been the controlling factor in making the sale-versus-loan determination:

> Additionally, there is abundant Arizona case authority holding that parol evidence is admissible to show that a conveyance absolute on its face was intended as a mortgage even though the instrument was knowingly cast in the form of a conveyance, and the true nature of the transaction is a question of intention to be inferred from all the facts and circumstances surrounding the transaction.
>
> \*\*\*
>
> We…hold…that the trial court properly admitted extrinsic evidence for the purpose of showing that the parties intended an arrangement to secure the repayment of [a debt].  *Downs v. Ziegler*, 13 Ariz. App. 387, 390, 477 P.2d 261, 264 (Ariz. App. 1970)  (Emphasis supplied.) [2]

This Court believes that assertion of a bona fide dispute regarding effect of provisions contained in the documents and instruments memorializing a transaction is a prerequisite to application of the test announced in *Merryweather*.  In this case, the relevant materials purport to evidence a sale (albeit one granting unusual post-sale rights to the seller).  At trial no competent, reliable evidence was introduced to establish a genuine dispute that the transaction at

---

[2] Arizona statutory law supports the proposition that the original intention of the parties determines the characterization of real estate transactions.  A.R.S. § 33-702(A) provides:
> Every transfer of an interest in real property, other than in trust, or a trust deed … made only as a security for the performance of another act, is a mortgage.  The fact that a transfer was made subject to defeasance on a condition may, for the purpose of showing that the transfer is a mortgage, be proved except against a subsequent purchaser or encumbrance for value and without notice, notwithstanding that the fact does not appear by the terms of the instrument.

3

issue was not a sale. Only one witness, Phillip Davis, DRB's representative during the negotiations, provided competent evidence of either party's intentions. Mr. Davis testified:

1. That because KI's debt to its lender was secured by both the Gravel Pits and the Industrial Property, and the lender would not grant a partial release of its collateral, DRB's motivation in agreeing to purchase the Industrial Property was primarily due to its need to obtain title to the Gravel Pits (Davis eventually acknowledged that he came to believe the Industrial Property might be a wise investment).
2. DRB knew that KI and its primary principal, Donald Kelland, asserted that the Industrial Property was worth millions of dollars more than the $1,081,000 purchase price set forth in the Industrial Property sale agreement. DRB did not agree with KI's valuation and steadfastly refused to offer to pay more for the Industrial Property than the amount necessary to allow DRB to obtain the Gravel Pits. This was the value of the property to DRB.
3. The concomitant option agreement entered into simultaneously with the Industrial Property purchase contract, and the contract's sales proceeds provision (discussed below) set forth in paragraph 7 of the contract, were agreed to because:
   a) DRB did not believe the Industrial Property had excess current value;
   b) it did not wish to own the property; and,
   c) DRB viewed the provision as a way to permit KI to profit from its value representations if it could successfully market the property within the time period granted by the option.

Mr. Davis' testimony was credible. More important, its relevant substantive points were not controverted by competent, credible evidence.

KI did not present any competent, credible witnesses who purported to speak for KI with respect to KI's intentions. During its case in chief, none of the witnesses claimed to have represented KI in its negotiations with DRB. They all mentioned Donald Kelland, the person who executed the agreement on behalf of KI, as KI's driving force and the sole person exercising

4

Case 0:10-ap-01392-EPB   Doc 88   Filed 09/20/13   Entered 09/23/13 14:11:43   Desc
Main Document    Page 4 of 8

KI decision-making authority. But when called to testify during KI's rebuttal case, Mr. Kelland admitted he had no recollection of the substantive negotiations concerning KI's agreement with DRB. To the extent KI believes that witnesses other than Mr. Kelland purported to testify regarding KI's position during the relevant period, the Court found their evidence either not competent, not credible, or both.

So does the *Merryweather* test, which requires that a trial court review extrinsic evidence regarding all facts and circumstances to determine intention, apply to this case? If it does, the decision in the *Downs* case suggests that only a perfunctory review is required if the parties do not identify a genuine disagreement as to original intent:

> Our Supreme Court has said that:
>
> Whether a transaction, ostensibly a conditional sale is in fact an equitable mortgage or pledge depends ultimately upon the intent of the parties. Where… the parties' testimony as to their intentions is wholly contradictory, such intentions must be determined from and in light of all the circumstances surrounding the transaction. 13 Ariz. 387, 390, 477 P.2d 261, 264. (Citing *Merryweather*, 90 Ariz. at 226, 367 P.2d at 255).

Here, KI failed to show a genuine dispute regarding the parties' original intentions with respect to the 2005 sale of the Industrial Property. However, should one or more learned jurists be called upon to review this conclusion, the Court provides the result of applying the *Merryweather* analysis to the facts found after evaluating and weighing the evidence.

### **The Question Becomes "Weather" Applicable Case Law Makes KI Merry**

In *Merryweather,* the Arizona Supreme Court set forth six non-exclusive factors trial judges should use when determining if an ostensible sale (particularly one accompanied by an option to repurchase) is actually an equitable mortgage. In this case, the Court finds these factors apply as follows:

5

1. <u>The prior negotiations of the parties</u>. Here both sides to the transaction were relatively sophisticated and had access to the advice of professionals. The uncontroverted, competent evidence established that they agreed upon a sale accompanied by the contractual obligation to provide KI with an eighteen-month window to attempt to realize additional value from the Industrial Property.

2. <u>The distress of the "grantor."</u> There is no dispute that KI was experiencing financial distress due to its inability to obtain substitute financing for its real estate holdings at the time it entered into its agreements with DRB. This factor, standing alone, would suggest a loan transaction occurred.

3. <u>The fact that the amount advanced was about the amount that the grantor needed to pay an existing indebtedness</u>. DRB paid no more for the Industrial Property than was necessary to obtain its release from the security interest held by KI's lender. KI asserts this means that this component of the *Merryweather* test favors KI. On its face, it does. But this finding is tempered by the fact that the evidence showed that the amount paid by DRB to close sale of the Industrial Property also included payoff of the debt related to the Gravel Pits. And it appears neither side believed their contract reflected the value of the Industrial Property. DRB didn't attempt to determine the stand-alone, appraised value of the property, because it was primarily interested in acquiring lien releases to obtain clear title to the Gravel Pits. And the evidence suggests KI believed the contractual terms reflect that the ultimate purchase price would include the value realized from some type of transaction to be initiated within a year-and-a-half after close of escrow. For purposes of this case, the Court will find this factor favors KI slightly.

4. <u>The amount of consideration paid in comparison to the actual value of the property in question</u>. This factor does not provide meaningful guidance in this case. Some appraisal reports were introduced containing hearsay regarding the opinions of those not called to testify about value attributed to the Industrial Property. These materials were given very little weight. And there was no dispute that DRB's stated position to KI was always that the Industrial Property's value from DRB's perspective was limited to the

6

sum needed to ensure that KI could convey clear title to the Gravel Pits. The bottom line is that at trial the only thing established was that the parties disagreed with respect to the value of the real estate; neither established its "actual value."

5. <u>Whether there was a contemporaneous agreement to repurchase the subject property</u>. DRB granted KI an option to repurchase the Industrial Property. But this option had a relatively short temporal limit (eighteen months). A provision in the purchase contract supplemented the option by preventing DRB from selling the Industrial Property during the option period without accounting to KI for any proceeds in excess of DRB's original purchase price (and incidental costs). The only credible evidence presented at trial supports DRB's position and showed that rights and benefits granted KI by way of the terms of these agreements were intended to aid DRB's efforts to obtain the Gravel Pits by providing KI the opportunity to realize the Industrial Property's excess value that Donald Kelland claimed existed at the time of closing. The applicable facts and circumstances support finding that a sale occurred.

6. <u>The subsequent acts of the parties as a means of discerning the interpretation they themselves gave to the transaction</u>. This factor strongly and clearly argues in favor of a finding that the disputed transaction was a sale. While there was some evidence that Donald Kelland and KI undertook cursory efforts to explore whether there was a way to financially exploit the Industrial Property post closing, these efforts were consistent with the rights granted under the original contract and the parties' option agreement. And to the extent these efforts indicate continuing interest in realty, this evidence was contradicted by the fact that DRB subdivided and developed a portion of the Industrial Property in the years after KI's option expired. The most important evidence relating to this factor and KI's intentions with respect to the transaction as a whole, established that from and after the date of the sale of the Industrial Property, both KI and its individual members avowed to the Internal Revenue Service that the property had been sold to DRB despite the fact that both KI and its members would have realized more

favorable tax consequences (read: they would not incur immediate federal income tax liability) had they taken the position that the DRB transaction constituted a loan.

After considering all of the evidence, the Court finds and concludes that KI has failed to prove that the transaction at issue here was an equitable mortgage. Therefore,

IT IS ORDERED:

1. Granting judgment in favor of DRB; and,
2. Directing counsel for DRB to upload and serve a form of judgment consistent with this ruling along with any request for an award of attorneys' fees and costs, on or before October 11, 2013. Counsel for KI shall have until October 25, 2013, to file any objection/memoranda relating to the award request. There shall be no reply by DRB.